**Randall Keith ROYAL, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–85–803.**

Court of Criminal Appeals of Oklahoma.

Sept. 20, 1988.

Mark Barrett, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Randall Keith Royal, was convicted in the District Court of Carter County, Case No. CFR–84–440, of the crime of Larceny of Merchandise from Retailer After Former Conviction of Two or More Felonies. He was sentenced to twenty years' imprisonment, and he appeals.

The facts disclosed by the record reveal that in the evening on December 23, 1984, appellant was caught carrying merchandise out of a Winn–Dixie grocery store in Ardmore, Oklahoma. On the scene, he claimed that he was going to see if his wife wanted to purchase the merchandise. At trial, he claimed that he had been drinking and taking drugs all day. He could not remember whether he intended to steal all of the merchandise, or just part of it. The jury found that he intended to take it all.

In his first assignment, appellant claims that reversible error occurred when the trial judge allowed the trial to proceed in his absence. The record shows that the trial took two days. Presentation of evidence was completed on the first. After a three day weekend, appellant failed to return for the continuation of trial. A search for appellant was made, and then the trial was completed.

One week later, appellant was located and arrested. He was brought before the judge, who entered judgment and sentence in accordance with the jury's recommendation.

Our statutes at 22 O.S.1981, § 583 make it clear that a district court cannot try a defendant on a felony charge without his presence. This point is further emphasized in 22 O.S.1981, § 912, which mandates that a defendant must be present when a verdict is returned. However, these rules are not without their exceptions. The law on this point is well settled in Oklahoma. In *Love v. State*, 675 P.2d 466 (Okl.Cr.1984), a case involving the same charge and the same sentence as the one contested here, this Court affirmed the conviction of a defendant when he failed to return after a lunch recess. Only voir dire and the State's opening statement were completed prior to the defendant's departure. After a 65 minute recess, the court was unable to ascertain the defendant's whereabouts, found his absence voluntary, and proceeded to trial.

In the present case, appellant failed to return to court after a three-day weekend. The trial court recessed for nearly two and a half hours. A warrant was issued for appellant's arrest. A deputy sheriff went to two residences to locate him and ascertained that appellant was not incarcerated. The deputy further testified that one of appellant's neighbors saw appellant an hour before court was to reconvene but did not know where he had gone. The courthouse premises was searched to see if appellant was there. Appellant's attorney, bondsman, and family were unable to provide any clues concerning appellant's absence or present location. Both the State and defense had already rested their cases. All that remained in the trial was the reading of instructions, arguments of counsel, and second stage proceedings. On this record, this Court cannot possibly find an abuse of discretion in allowing trial to proceed. The State had already incurred

the expense of presenting evidence, and had expended the time necessary to do that. Appellant had been present to confront all witnesses against him and to assist in his own defense. The jury had sat through the entire presentation and had returned after a long weekend to complete its task. There was absolutely no showing of any likelihood that the trial could be rescheduled in the near future with the appellant's presence. As appellant had been seen that morning in good health, the court reasonably inferred that appellant's absence was voluntary and not caused by a medical emergency. Thus, by his absence, appellant was reasonably found to have waived his right to be present at trial.

Appellant cannot justifiably rely upon past decisions of this Court reflecting the view that a defendant's right to be present is mandatory and non-waivable. A review of those cases shows that the real problem requiring reversal was the failure of the trial court to make any record reflecting that a defendant's rights were recognized or that an adequate effort was made to protect them. That problem is not present in this case.

■ Nor can appellant rely upon the word "must" in 22 O.S.1981, § 583, to require reversal in this case. If such a strict construction were to be followed, no facts could be tried without a jury either. *See* 22 O.S.1981, § 582. Section 583 was adopted simultaneously and side-by-side with § 582, and the word "must" must be construed in similar fashion in each of these sections.

■ Appellant correctly points out that when the legislature reenacts a provision which has been previously construed by the courts, it is also deemed to have adopted that construction. *Horath v. Pierce*, 506 P.2d 548 (Okl.1973). That point, however, is not helpful to appellant. This Court is aware of cases in Oklahoma at least as old as *McClendon v. State*, 36 Okl.Cr. 11, 251 P. 515 (1926), which recognize a defendant's waiver of the right to be present by his voluntary absence. Section 583 of Title 22 was most recently reenacted in 1981, following our decisions in *Roberts v. State*, 523 P.2d 1150 (Okl.Cr.1974), *Warren v.*

*State*, 537 P.2d 443 (Okl.Cr.1975), *Ware v. State*, 556 P.2d 1073 (Okl.Cr.1976), *Delancy v. State*, 596 P.2d 897 (Okl.Cr.1979), and *Sonnier v. State*, 597 P.2d 771 (Okl.Cr. 1979), all of which found waiver by the defendant of his right to be present at trial. It is therefore unavoidably clear that the construction applied by this Court in this case reflects the true intention of the legislature.

■ Appellant further contends that his absence was not voluntary. Rather, he claims that his absence was induced by his fear of going to prison. While we recognize that this may have been a rational fear, we cannot view it as making appellant's absence anything less than voluntary. His situation is far different from the cases on which he relies, where angry mobs assembled at the courthouse to administer their own form of justice during trial. *See Massey v. State*, 31 Tex.Cr. 382, 20 S.W. 758 (1892); *Fountain v. State*, 135 Md. 77, 107A.554 (1919). In light of the foregoing discussion, we find this assignment to be without merit.

In his remaining assignment, appellant seeks reversal of his conviction due to alleged improper references at trial to his post-arrest silence. At trial, appellant attempted to establish the affirmative defense of voluntary intoxication, claiming that he was so impaired that he could not distinguish right from wrong or that he could not appreciate the nature and consequences of his acts. In rebuttal, the State called Detective George Elisee to the stand. He testified that he was in the Winn–Dixie store when the manager and an employee escorted appellant into a back room. Elisee went to the back to offer his assistance. He spent fifteen to twenty minutes with the appellant and testified that appellant did not appear to be intoxicated. Thereafter, the following colloquy ensued:

[Prosecutor]: During your conversation you had, did he seem able to respond to questions? Was it a rational conversation?

[Elisee]: He's pretty excited. He kept calling for Charlie Milor and he didn't really have a whole lot to say.

Q: Did he tell you who Charlie Milor was or why he wanted Charlie Milor?

[Defense counsel]: I'll object, it's irrelevant.

[Prosecutor]: I think it's relevant as to the state of the defendant's intoxication or whether he was high.

The Court: Your question was why did he want Charlie Milor.

[Prosecutor]: Well, I asked him if he told him who Charlie was, or why he wanted him called.

[Defense counsel]: It's not relevant. I don't think it is pertinent as rebuttal evidence either.

The Court: Well, it might be relevant on the state of his sobriety. You may inquire.

[Prosecutor]: Go ahead.

[Elisee]: He said he wanted to talk to his lawyer ...

Appellant claims that Elisee's last remark was an improper comment on appellant's exercise of his right to remain silent, *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); that the State failed to demonstrate whether that silence preceded or followed giving of *Miranda* warnings, *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982); and that regardless of the timing of the warning, Oklahoma law requires automatic reversal of any conviction wherein any evidence of any pretrial silence is introduced, *Farley v. State,* 717 P.2d 111 (Okl.Cr.1986). Appellant has misconstrued the law.

■ First, the rule in *Doyle* is a narrow one which is not applicable to the facts in this case. The rule is that a defendant's explanation of the events cannot be impeached during cross-examination of the defendant at trial by bringing up his silence which was induced by an action of the government. Even if we were to assume, contrary to the record, that the challenged remark had been elicited during cross-examination of appellant, we find it difficult to view appellant's conduct as invoking his right to remain silent. Testimony of the store manager revealed that during the time appellant was in the back room waiting for the police to arrive, he voluntarily and without any inducement began pulling merchandise out of his pants and laying it out on the table, saying, "Here, I have these."

Furthermore, even if we were to view appellant's conduct as invoking his right to remain silent, there is nothing in the record to indicate that the silence was induced by an action of the government. In *Weir v. Wilson,* 744 F.2d 532 (6th Cir.1984) *cert. denied* 469 U.S. 1223, 105 S.Ct. 1215, 84 L.Ed.2d 356 (1985), the Sixth Circuit stated:

[I]t is enough for our purposes here to observe that the prosecutor's cross-examination was not shown to have extended to any silence which occurred after the *Miranda* warnings were administered. We believe that in the present posture of the law, *it is necessary that the defense make such a showing before Doyle v. Ohio, ... comes into play.*

Id. at 535. (Emphasis added.) That statement, which is applicable to the present case, clearly demonstrates the inapplicability of the rule in *Doyle.*

*Fletcher v. Weir, supra,* is also unhelpful to appellant's case. That case was brought by the State to have a writ of habeas corpus set aside. Relief was granted, the Supreme Court holding in effect that a record devoid of evidence on the timing of *Miranda* warnings will not show that a defendant's silence was induced by an action of the government. They found that the record did not support application of the *Doyle* rule, and the Sixth Circuit's decision was reversed. The remand resulted in *Weir v. Wilson, supra,* quoted above.

Appellant's construction of Oklahoma law is also faulty. In *Farley v. State,* 717 P.2d 111, 112 (Okl.Cr.1986), this Court stated:

There are circumstances under which prior silence may be viewed as inconsistent with testimony and hence may be used to impeach the testimony of a witness. Under other circumstances, however, silence may be so highly ambiguous that it lacks sufficient probative value to bear on the credibility of the witness. The question before this Court is whether the

appellant's silence was more probative than prejudicial or vice versa.

▮ Assuming that appellant exercised his right to remain silent by requesting his attorney, we are presented with the same question in this case. We find the evidence in this case to be highly probative as to appellant's state of mind, evincing full awareness of his situation and control of his mental faculties. Such evidence was relevant to rebut appellant's defense of voluntary intoxication. The prejudicial impact of this single reference to the request for an attorney must be viewed as too small to warrant reversal, even if it were not relevant. The State's witnesses provided more than ample testimony to prove appellant's sobriety. *See Villaneuva v. State,* 695 P.2d 858 (Okl.Cr.1985). *Kreijanovsky v. State,* 706 P.2d 541 (Okl.Cr.1985).

This Court is not unaware of the Supreme Court's holding in *Wainwright v. Greenfield,* 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986). However, we view that case as an extended application of *Doyle v. Ohio, supra.* Inasmuch as *Doyle* is inapplicable to this case, neither do we find *Wainwright* controlling. Accordingly, this assignment of error must fail.

Finding no basis for modification or reversal, the judgment and sentence of the District Court of Carter County is

AFFIRMED.

BRETT, P.J., and PARKS, J., concur.