James CAPEHART, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–684.

Court of Criminal Appeals of Oklahoma.

Jan. 26, 1977.

Layden & Layden, Thomas B. Webb, McAlester, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Michael L. Darrah, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, James Capehart, hereinafter referred to as the defendant, was charged in the District Court, Pittsburg County, Case No. CRF–75–255, with the offense of Unlawful Cultivation of Marijuana, in violation of 63 O.S.1971, § 2–509. He was tried by a jury and convicted of the aforementioned crime, his punishment being fixed at ten (10) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

The State's first witness was McAlester Police Officer George Scott. He related executing a search warrant at 114½ South "B" Street in McAlester on the evening of September 25, 1975. Searching the balcony of the apartment, this officer found eight pots containing what appeared to be twelve marijuana plants. He assisted in the transportation of the plants to the Sheriff's Office of Pittsburg County. It was brought out on cross-examination that the defendant's mother was the legal owner of the building.

The State's next witness, Pittsburg County Sheriff J. B. Orr, and their third witness, McAlester Police Officer Jim Hulsey, were present during the execution of the search warrant. Their testimony was substantially corroborative in nature to that of Officer Scott.

Officer Toby D. McClellan testified to arresting the defendant on September 25, 1975, and a brief conversation subsequent to the administration of 'Miranda warnings.' He related the defendant asking him, "where did you find it in my house?" (Tr. 38). He related on cross-examination the presence of several people in the apartment that evening, including the defendant's mother and son, and the other officers.

The State's fifth witness, Deputy Sheriff Jerome Amaranto, established the chain of custody of the evidence between the balcony and the Crime Bureau Laboratory, removing leaves from each plant and delivering them for analysis.

Pamela Greer was next called on behalf of the State, and related numerous occasions wherein she visited the defendant at 114½ South "B" Street and observed marijuana plants growing therein. Defense counsel brought out on cross-examination that this witness' husband had been promised a recommendation of a suspended sentence for a similar crime in return for her testimony.

Mrs. Fern Capehart, the defendant's mother, testified to being the legal owner of the premises, and that her son, the defendant, was living in that apartment. She related on cross-examination that the defendant and his wife had been living with her in the "main house" occasionally due to the pregnancy of the defendant's wife.

The State's eighth witness was Officer Louis Perry, who related being the jailer on the night the defendant was taken into custody. He related asking the defendant several questions in filling out a "booking card," and in response to his inquiry as to the defendant's address, he was given 114½ South "B" Street.

Gerald Belyeu, a forensic chemist, was the State's final witness. He related performing several chemical determination tests on the evidence submitted by Officer Amaranto, all of which indicated the substance was marijuana.

At this time, the State rested, and the defendant's demurrer to the evidence was overruled.

As his sole witness, the defendant recalled Mrs. Fern Capehart, who related being the owner of the property, and having control and possession thereof. At the conclusion of this testimony, the defendant rested.

█ The defendant's first assignment of error alleges the commission of reversible

error in that the trial court refused his offered instruction as to a lesser included offense; possession of a controlled dangerous substance (marijuana), a misdemeanor. We do not agree. The State's evidence, if believed, showed the defendant guilty of the crime of cultivation, and nothing less; the defendant's evidence, if believed, would have showed him to be an innocent party without knowledge of the presence of the marijuana and without control or dominion over it. See, *McKee v. State,* Okl.Cr., 531 P.2d 343 (1975). Thus, the evidence presented at trial did not support a finding of any such lesser offense; we have held if such facts (relating to lesser included offenses) are not in evidence, it is unnecessary for an instruction to be given thereon. *Sargent v. State,* Okl.Cr., 509 P.2d 143 (1973). It is the opinion of this Court that the trial court properly refused the defendant's requested instruction; the defendant was either guilty of cultivation of the proscribed plants, or not guilty.

■ The defendant's second assignment of error is that his motion for mistrial was improperly overruled when made during allegedly improper closing arguments by the prosecution. The motion was interposed as follows:

> "MR. WHITTINGTON: . . . this defendant is in here telling you to turn me loose so I can keep at it, so I can stay in the business. You folks will set the punishment, you folks will decide; if it were up to me I would not recommend that he get the same treatment that the other one did—
>
> "MR. LAYDEN: Could I make an objection please. At this time I ask for a mis-trial—
>
> "COURT: Overruled. As I have said before what the lawyers say isn't evidence, it's merely their conclusions . . ." (Tr. 138).

We have repeatedly held that only where argument by counsel is *grossly improper* and not warranted by the evidence can a reversal be had on grounds of improper argument, *Harvell v. State,* Okl.Cr., 395

P.2d 331 (1964). Our initial reaction to the above exchange is that it fails the test of gross impropriety, especially since the jury admonishment followed. However, we find the existence of later comment in closing argument which we feel merits the eventual disposition of this issue.

■ At several points in his closing argument we find comments by the prosecution referring to the defendant being the ". . . ground floor of chain of the ladder of distribution of marijuana. . . ." Prior and subsequent comments reinforce the suggestion that the defendant is a drug pusher, a fact not supported by the record. It is our opinion this presented improper inferences for the jury's consideration, was a weighty influence in the imposition of the maximum term of incarceration, and warrants the modification of the sentence to follow.

■ The defendant's third assignment of error is that his motion for mistrial was improperly overruled when interposed as the prosecution (allegedly) attempted to extract testimony of his witnesses concerning other crimes committed by other parties. We reach a different conclusion from the record than that propounded by the defendant, and therefore rule this assignment of error to be without merit. It is evident from the record that Miss Greer was, in part, supportive of the allegation of defendants knowing control and dominion over the apartment and the cultivation of marijuana, and in order to establish some knowledge on her part of the appearance of marijuana, the prosecution was attempting to show that her husband had been convicted of the same offense. We note that the offense of Mr. Greer (not called as a witness) was alluded to several times, that each time the defendant objected and his objection was sustained; further we note that the jury was admonished ". . . to disregard the question that was asked by the District Attorney concerning other crimes." (Tr. 79). It is our conclusion that these curative measures, coupled with the innocuous nature of the alleged error, were sufficient to preclude the possibility of prejudice to the defendant.

The defendant's final assignment of error alleges that the State failed to introduce sufficient evidence to support a conviction under 63 O.S.1971, § 2–509, therefore his demurrer at the close of the State's evidence was improperly overruled.

■ The defendant's first prong in this assignment is that the term "cultivation" as used in the statute is not applicable to the growing of twelve plants in eight flower pots. We have previously considered and rejected this argument in *Box v. State,* Okl.Cr., 541 P.2d 262 (1975). The defendant there argued that "cultivation" could not apply to a plant grown in a ceramic pot; our decision held that such constituted growth of marijuana on "lands" within the meaning of the statute. The defendant's argument herein would have us rule that the growth of marijuana inside his own home is outside the legislative intent of prohibiting cultivation of marijuana; we submit that this would be an absurd interpretation of 63 O.S.1971, § 2–509.

■ The defendant also alleges that the State failed to establish defendant's knowledge and control of the marijuana, but we would point out the evidence is to the contrary. The defendant gave 114½ "B" Street as his address in response to a question as to his home address, witnesses testified visiting him at that address, the defendant's clothing was there, and, he claimed it as his house in conversing with the arresting officer. Considering that the exclusive access route to the balcony was through this apartment, it is difficult for us to perceive how a jury could have found anything other than the marijuana being within the defendant's knowledge and control.

It is, therefore, our decision that the demurrer at the close of the State's evidence was properly overruled, since the record is replete with competent evidence from which the jury could find the defendant guilty as charged.

In accordance with our treatment and holding in the defendant's second assignment of error, however, we would MODIFY the sentence herein rendered from ten (10) years to five (5), as authorized by 22 O.S. 1971, § 1066.

As so MODIFIED, the judgment and sentence appealed from is otherwise AFFIRMED.

BRETT, P. J., and BUSSEY, J., concur.